JUDGE KOELTL

## UNITED STATES DISTRICT COURT
## SOUTHER DISTRICT OF NEW YORK

JENNIFER SAX, Individually and On Behalf
of All Other Persons Similarly Situated,

Civil Action No.: 12 CV 5724

:
:
:
Plaintiff,    :          **JURY TRIAL DEMANDED**
:
:
v.          :
:
NEW    ORIENTAL    EDUCATION    &    :
TECHNOLOGY GROUP, INC., MICHAEL    :
MINHONG YU, and LOUIS T. HSIEH,    :
:
Defendants.    :
:

### CLASS ACTION COMPLAINT

Plaintiff Jennifer Sax ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding New Oriental Education & Technology Group Inc. ("EDU" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased EDU's American Depositary Shares ("ADS") between July 21, 2009 and July 17, 2012, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials.

2.       EDU offers educational services.  The Company offers foreign language training, test preparation courses for admissions and assessment tests in the United States, the People's Republic of China ("China"), and Commonwealth countries, primary and secondary school education, development and distribution of educational content, software and other technology, and online classes.

3.       On July 17, 2012, the Company disclosed that the SEC "had issued a formal order of investigation" as to whether the Company appropriately consolidated the earnings of Beijing New Oriental Education & Technology (Group) Co., Ltd., a variable interest entity of the Company, and its wholly-owned subsidiaries.

4.       On this news, EDU's ADS plummeted $7.64 per ADS or more than 34%, to close at $14.62 per ADS on July 17, 2012.

5.       On July 18, 2012, Muddy Waters, LLC ("Muddy Waters") issued an analyst report with a strong sell rating, predicting that the Company "will have a significant restatement, and that its auditor will resign."

6.       On this news, EDU's ADS declined an additional $5.12 per ADS or more than 35%, to close at $9.50 per ADS on July 18, 2012.

2

7.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company improperly consolidated into its financial statements the earnings of a variable interest entity and its wholly-owned subsidiaries; (2) that a significant number of the Company's schools and learning centers were not company-owned, but were rather operated by numerous franchisees; (3) the Company improperly consolidated franchisees' financial results to its financial statements; (4) the schools that conduct EDU's operations are state property, and not owned by EDU; (5) that upfront franchise and other fees had inflated the Company's cash balances; (6) the Company lacked adequate internal and financial controls; and (7) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADS, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

11.     Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) as the shares of EDU were publicly traded in this District.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Plaintiff as set forth in the attached Certification purchased EDU ADS at artificially inflated prices during the Class Period and has been damaged thereby.

14.     Defendant EDU is a Cayman Islands corporation, with its principal place of business located at No. 6 Hai Dian Zhong Street, Haidian District, Beijing 10080, China.  EDU's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "EDU."

15.     Defendant Michael Minhong Yu ("Yu"), the Company's founder, at all relevant times, has been the Company's Chairman of the Board of Directors ("Board") and Chief Executive Officer ("CEO").

16.     Defendant Louis T. Hsieh ("Hsieh"), at all relevant times, has been the Company's Chief Financial Officer ("CFO") and a director.  Since May 2009, Hsieh has been the Company's President.

17.     The defendants referenced above in ¶¶ 15 and 16 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.     EDU is the largest provider of private educational services in China based on the number of program offerings, total student enrollments and geographic presence. The Company offers a wide range of educational programs, services and products, consisting primarily of

4

English and other foreign language training, test preparation courses for admissions and assessment tests in the United States, China and Commonwealth countries, primary and secondary school education, development and distribution of educational content, software and other technology, and online education. The Company provides educational services under the "New Oriental" brand.  The Company has a consolidated affiliated entity or a variable interest entity ("VIE") called Beijing New Oriental Education & Technology (Group) Co., Ltd. ("New Oriental China") and its subsidiaries.

<div align="center">

**Materially False and Misleading**
**<u>Statements Issued During the Class Period</u>**

</div>

19.     On July 21, 2009, the Company issued a press release announcing its financial results for the fiscal fourth quarter and year ended May 31, 2009.  For the quarter, the Company reported net income of $2.6 million, or $0.07 diluted earnings per ADS and net revenue of $59.4 million, as compared to net income of $1.8 million, or $0.05 diluted earnings per ADS and net revenue of $40.2 million for the same period a year ago.  For the year, the Company reported net income of $61 million, or $1.59 diluted earnings per ADS and net revenue of $293 million, as compared to net income of $49 million, or $1.25 diluted earnings per ADS and net revenue of $201 million for the same period a year ago.

20.     On October 19, 2009, the Company filed an annual report for the period ended May 31, 2009 on Form 20-F with the SEC, which was signed by, Defendant Yu, and reiterated the Company's annual financial results and financial position.  In addition, the Form 20-F contained signed certifications by Defendants Yu and Hsieh, stating that the financial information contained in the Form 20-F was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

21.    The Form 20-F represented the following in relevant part concerning the Company's contractual arrangements with New Oriental China and its subsidiaries:

> PRC laws and regulations currently require any foreign entity that invests in the education business in China to be an educational institution with relevant experience in providing education outside of China. Our Cayman Islands holding company is not an educational institution and does not provide educational services. Accordingly, our whole owned subsidiaries in China, which are considered foreign invested, are currently ineligible to apply for the required education licenses and permits in China. In addition, PRC laws and regulations prohibit foreign ownership of primary and middle schools for students in grades one to nine in China. We conduct our education business in China through contractual arrangements with New Oriental China and its subsidiaries and shareholders. New Oriental China is our consolidated affiliated entity directly owned by our founders and their respective affiliates, as applicable. New Oriental China's subsidiaries hold the requisite licenses and permits necessary to conduct our education business and operate our schools, learning centers and physical bookstores as well as online education business in China. We have been and are expected to continue to be dependent on New Oriental China and its subsidiaries to operate our education business until we qualify for direct ownership of an education business in China. We have entered into contractual arrangements with New Oriental China and its subsidiaries, pursuant to which we, through our wholly owned subsidiaries in China, provide exclusive teaching support, new enrollment system support and other services to New Oriental China and its subsidiaries in exchange for payments from them. In addition, we have entered into agreements with New Oriental China and each of the shareholders of New Oriental China which provide us with the substantial ability to control New Oriental China and its existing and future subsidiaries.

22.    On October 20, 2009, the Company issued a press release announcing its financial results for the fiscal first quarter ended August 31, 2009.  For the quarter, the Company reported net income of $57 million, or $1.47 diluted earnings per ADS and net revenue of $149.4 million, as compared to net income of $44.9 million, or $1.17 diluted earnings per ADS and net revenue of $118.3 million for the same period a year ago.

23.    On January 19, 2010, the Company issued a press release announcing its financial results for the fiscal second quarter ended November 30, 2009.  For the quarter, the Company reported net income of $1.1 million, or $0.03 diluted earnings per ADS and net revenue of $61.2

million, as compared to net income of $3.1 million, or $0.08 diluted earnings per ADS and net revenue of $49.4 million for the same period a year ago.

24.     On April 20, 2010, the Company issued a press release announcing its financial results for the fiscal third quarter ended February 28, 2010.  For the quarter, the Company reported net income of $13.8 million, or $0.36 diluted earnings per ADS and net revenue of $89.2 million, as compared to net income of $10.4 million, or $0.27 diluted earnings per ADS and net revenue of $65.4 million for the same period a year ago.

25.     On July 19, 2010, the Company issued a press release announcing its financial results for the fiscal fourth quarter and year ended May 31, 2010.  For the quarter, the Company reported net income of $5.8 million, or $0.15 diluted earnings per ADS and net revenue of $86.6 million, as compared to net income of $2.6 million, or $0.07 diluted earnings per ADS and net revenue of $59.4 million for the same period a year ago.  For the year, the Company reported net income of $77.8 million, or $2.01 diluted earnings per ADS, and net revenue of $386.3 million, as compared to net income of $61 million, or $1.59 diluted earnings per ADS and net revenue of $293 million for the same period a year ago.

26.     On October 14, 2010, the Company filed an annual report for the period ended May 31, 2010 on Form 20-F with the SEC, which was signed by, Defendant Yu, and reiterated the Company's annual financial results and financial position.  In addition, the Form 20-F contained signed certifications by Defendants Yu and Hsieh, stating that the financial information contained in the Form 20-F was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

27.     The Form 20-F represented the following in relevant part concerning the Company's contractual arrangements with New Oriental China and its subsidiaries:

PRC laws and regulations currently require any foreign entity that invests in the education business in China to be an educational institution with relevant experience in providing education outside of China. Our Cayman Islands holding company is not an educational institution and does not provide educational services. Accordingly, our wholly owned subsidiaries in China, which are considered foreign invested, are currently ineligible to apply for the required education licenses and permits in China. In addition, PRC laws and regulations prohibit foreign ownership of primary and middle schools for students in grades one to nine in China. We conduct our education business in China through contractual arrangements with New Oriental China and its subsidiaries and shareholders. New Oriental China is our consolidated affiliated entity directly owned by our founders and their respective affiliates, as applicable. New Oriental China's subsidiaries hold the requisite licenses and permits necessary to conduct our education business and operate our schools, learning centers and physical bookstores as well as online education business in China. We have been and are expected to continue to be dependent on New Oriental China and its subsidiaries to operate our education business until we qualify for direct ownership of an education business in China. We have entered into contractual arrangements with New Oriental China and its subsidiaries, pursuant to which we, through our wholly owned subsidiaries in China, provide exclusive teaching support, new enrollment system support and other services to New Oriental China and its subsidiaries in exchange for payments from them. In addition, we have entered into agreements with New Oriental China and each of the shareholders of New Oriental China which provide us with the substantial ability to control New Oriental China and its existing and future subsidiaries.

28.    On October 18, 2010, the Company issued a press release announcing its financial results for the fiscal first quarter ended August 31, 2010.  For the quarter, the Company reported net income of $62.4 million, or $1.61 diluted earnings per ADS and net revenue of $192.3 million, as compared to net income of $57 million, or $1.47 diluted earnings per ADS and net revenue of $149.4 million for the same period a year ago.

29.    On January 18, 2011, the Company issued a press release announcing its financial results for the fiscal second quarter ended November 30, 2010.  For the quarter, the Company reported net income of $1.8 million, or $0.05 diluted earnings per ADS and net revenue of $95.7 million, as compared to net income of $1.1 million, or $0.03 diluted earnings per ADS and net revenue of $61.2 million for the same period a year ago.

30.     On April 27, 2011, the Company issued a press release announcing its financial results for the fiscal third quarter ended February 28, 2011.  For the quarter, the Company reported net income of $23.3 million, or $0.60 diluted earnings per ADS and net revenue of $132.5 million, as compared to net income of $13.8 million, or $0.36 diluted earnings per ADS and net revenue of 89.2 million, for the same period a year ago.

31.     On July 18, 2011, the Company issued a press release announcing its financial results for the fiscal fourth quarter and year ended May 31, 2011.  For the quarter, the Company reported net income of $14.3 million, or $0.37 diluted earnings per ADS and net revenue of $137.4 million, as compared to net income of $5.8 million, or $0.15 diluted earnings per ADS and net revenue of $86.6 million for the same period a year ago.  For the year, the Company reported net income of $101.6 million, or $2.61 diluted earnings per ADS and net revenue of $557.9 million, as compared to net income of $77.8 million, or $2.01 diluted earnings per ADS, and net revenue of $386.3 million for the same period a year ago.

32.     On October 14, 2011, the Company filed an annual report for the period ended May 31, 2011 on Form 20-F with the SEC, which was signed by, Defendant Yu, and reiterated the Company's annual financial results and financial position.  In addition, the Form 20-F contained signed certifications by Defendants Yu and Hsieh, stating that the financial information contained in the Form 20-F was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

33.     The Form 20-F represented the following in relevant part concerning the Company's contractual arrangements with New Oriental China and its subsidiaries:

> PRC laws and regulations currently require any foreign entity that invests in the education business in China to be an educational institution with relevant experience in providing education outside of China. Our Cayman Islands holding company is not an educational institution and does not provide educational services. Accordingly, our wholly owned subsidiaries in China, which are

considered foreign invested, are currently ineligible to apply for the required
education licenses and permits in China. In addition, PRC laws and regulations
prohibit foreign ownership of primary and middle schools for students in grades
one to nine in China. We conduct our education business in China through
contractual arrangements with New Oriental China and its subsidiaries and
shareholders. New Oriental China is our consolidated affiliated entity directly
owned by our founders and their respective affiliates, as applicable. New Oriental
China's subsidiaries hold the requisite licenses and permits necessary to conduct
our education business and operate our schools, learning centers and physical
bookstores as well as online education business in China. We have been and are
expected to continue to be dependent on New Oriental China and its subsidiaries
to operate our education business until we qualify for direct ownership of an
education business in China. We have entered into contractual arrangements with
New Oriental China and its subsidiaries, pursuant to which we, through our
wholly owned subsidiaries in China, provide exclusive teaching support, new
enrollment system support and other services to New Oriental China and its
subsidiaries in exchange for payments from them. In addition, we have entered
into agreements with New Oriental China and each of the shareholders of New
Oriental China which provide us with the substantial ability to control New
Oriental China and its existing and future subsidiaries.

34.     On October 18, 2011, the Company issued a press release announcing its financial

results for the fiscal first quarter ended August 31, 2011.  For the quarter, the Company reported

net income of $90.7 million, or $0.58 diluted earnings per ADS and net revenue of $272 million,

as compared to net income of $62.4 million, or $0.40 diluted earnings per ADS and net revenue

of $192.3 million for the same period a year ago.

35.     On January 17, 2012, the Company issued a press release announcing its financial

results for the fiscal second quarter ended November 30, 2011.  For the quarter, the Company

reported net income of $3.3 million, or $0.02 per diluted earnings per ADS and net revenue of

$132 million, as compared to net income of $1.8 million, or $0.01 diluted earnings per ADS and

net revenue of $95.7 million for the same period a year ago.

36.     On April 17, 2012, the Company issued a press release announcing its financial

results for the fiscal third quarter ended February 29, 2012.  For the quarter, the Company

reported net income of $22.4 million, or $0.14 diluted earnings per ADS and net revenue of

$174.5 million, as compared to net income of $23.3 million, or $0.15 diluted earnings per ADS and net revenue of $132.5 million for the same period a year ago.

37.     On July 11, 2012, in a press release, the Company announced "that it further strengthened its corporate structure by simplifying the shareholding structure of Beijing New Oriental Education & Technology (Group) Co., Ltd."   The press release further stated the following in relevant part:

> New Oriental China is a variable interest entity, or VIE, of the Company. Prior to the changes in the shareholding structure of New Oriental China that were initiated in December 2011, equity interests in New Oriental China had been held by eleven registered shareholders, including an entity controlled by Mr. Michael Minhong Yu, the founder, Chairman and Chief Executive Officer of the Company. These shareholders had entered into contractual arrangements to enable the Company to effectively control and be the primary beneficiary of New Oriental China. Except for the one shareholder, which is an entity controlled by Mr. Yu, all former ultimate shareholders of New Oriental China were former employees or shareholders of the Company who no longer work at the Company or ceased to have a meaningful stake in the Company. The Company believes that New Oriental China's equity interests should only be held by the shareholders whose interests are more closely aligned with those of the Company, and that the interests of Mr. Yu, who is the Company's founder, Chairman and Chief Executive Officer, are aligned with those of the Company, given the significant beneficial ownership Mr. Yu has in the Company and his continuing leadership position at the Company.
>
> In light of the above and in an effort to further strengthen the Company's corporate structure and control over New Oriental China, the Company requested the ten former shareholders of New Oriental China to transfer all of their equity interests in New Oriental China to the one shareholder, which is an entity controlled by Mr. Yu, without consideration. These transfers began in December 2011 and were completed in January 2012 when the new shareholding structure was officially registered with the local administration for industry and commerce. Equity pledge agreements reflecting the new shareholding structure were executed in April 2012 and duly registered in May 2012. New Oriental China is now solely held by the entity controlled by Mr. Yu. Since 2005, this entity has been bound by the contractual arrangements it entered into with the Company's wholly-owned subsidiaries, which enable the Company to exercise effective control over and be the primary beneficiary of New Oriental China.

38.     The statements referenced in ¶¶ 19 - 37 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which

were known to defendants or recklessly disregarded by them that: (1) the Company improperly consolidated into its financial statements the earnings of a variable interest entity and its wholly-owned subsidiaries; (2) that a significant number of the Company's schools and learning centers were not company-owned, but were operated by numerous franchisees; (3) the Company improperly consolidated franchisees' financial results with its financial statements; (4) the schools that conduct EDU's operations were not owned by the Company, but were rather state property; (5) that upfront franchise and other fees had inflated the Company's cash balances; (6) the Company lacked adequate internal and financial controls; and (7) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

## THE TRUTH BEGINS TO EMERGE

39.     On July 17, 2012, the Company issued a press release announcing its financial results for the fiscal fourth quarter and year ended May 31, 2012.  For the quarter, the Company reported net income of $16.3 million, or $0.10 diluted earnings per ADS, and net revenue of $193.3 million, as compared to net income of $14.3 million, or $0.09 diluted earnings per ADS and net revenue of $137.4 million for the same period a year ago.  For the year, the Company reported net income of $132.7 million, or $0.85 diluted earnings per ADS, and net revenue of $771.7 million, as compared to net income of $101.6 million, or $0.65 diluted earnings per ADS and net revenue of $557.9 million for the same period a year ago.  The Company also disclosed the following concerning a SEC Investigation:

> On July 13, 2012, the Company was informed that the U.S. Securities & Exchange Commission (the "SEC") had issued a formal order of investigation captioned "In the Matter of New Oriental Education & Technology Group Inc." The Company believes that the investigation concerns whether there is a sufficient basis for the consolidation of Beijing New Oriental Education & Technology (Group) Co., Ltd., a variable interest entity of the Company, and its wholly-owned subsidiaries, into the Company's consolidated financial statements. The Company intends to fully cooperate with the SEC in its investigation.

40.     On this news, EDU's ADS plummeted $7.64 per ADS or more than 34%, to close at $14.62 per ADS on July 17, 2012.

41.     On July 18, 2012, Muddy Waters Research ("Muddy Waters") published an analyst report with a "Strong Sell" recommendation, predicting that  the Company would need to make "a significant restatement, and that its auditor will resign."  Specifically, Muddy Waters concluded the following regarding the Company:

> EDU has reported 392% revenue growth since going public. The revenue growth has been built on store growth of 338% during this time. EDU tells investors that its entire store network is company-owned, but this is a lie. As recently as last month, EDU president and CFO Louis Hsieh adamantly denied that EDU has any franchisees. This report shows Hsieh's statements are patently false – EDU has numerous franchisees. However, these franchisees are not a hidden bonus for investors. Rather, they are part of a substantial fraud in EDU's accounts.
>
> It is virtually certain that EDU uses the upfront franchise and other fees to inflate its cash balances in order to receive unqualified audit opinions from its auditor.
>
> EDU's Beijing operation (which is approximately 35% of EDU's reported revenue) has prepared financial statements for 2009 – 2011 are fraudulent. EDU has submitted these financial statements to its domestic regulator, the Civil Affairs Bureau ("CAB"). It is probable that EDU used these same financials in the preparation of its U.S. filings.
>
> EDU's corporate structure is far more problematic than just a weak VIE. The schools that conduct its operations are ultimately state property. We question how EDU can consolidate them.
>
> We believe that as a result of our exposure of these problems with EDU's reporting, EDU will restate historical results – likely significantly; and, that its auditor will resign.

42.     On this news, EDU's ADS declined an additional $5.12 per ADS or more than 35%, to close at $9.50 per ADS on July 18, 2012.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired EDU's ADS during the Class Period (the "Class"); and were damaged thereby.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, EDU's ADSs were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by EDU or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in ADS class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of EDU;

- whether the Individual Defendants caused EDU to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of EDU ADS during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

49.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- EDU ADS are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's ADS; and

- Plaintiff and members of the Class purchased and/or sold EDU ADS between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

50. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants for Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

51. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

53. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of

16

EDU ADS; and (iii) cause Plaintiff and other members of the Class to purchase EDU ADS and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

54.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for EDU ADS.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about EDU's finances and business prospects.

55.     By virtue of their positions at EDU, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

56.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of EDU ADS from their personal portfolios.

57.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers

and/or directors of EDU, the Individual Defendants had knowledge of the details of EDU internal affairs.

58.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of EDU.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to EDU's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of EDU ADS was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning EDU's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased EDU ADS at artificially inflated prices and relied upon the price of the ADS, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

59.     During the Class Period, EDU ADSs were traded on an active and efficient market.   Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of EDU ADS at prices artificially inflated by defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased said EDU's ADS, or would not have purchased them at the inflated prices that were paid.   At the time of the purchases by Plaintiff and the Class, the true value of EDU ADSs was substantially lower than the prices paid by Plaintiff and the other members of the Class.   The market price of EDU ADS declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

60.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's ADS during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the
Exchange Act Against The Individual Defendants)**

62.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63.     During the Class Period, the Individual Defendants participated in the operation and management of EDU, and conducted and participated, directly and indirectly, in the conduct of EDU's business affairs.  Because of their senior positions, they knew the adverse non-public information about EDU's misstatement of income and expenses and false financial statements.

64.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to EDU's financial condition and results of operations, and to correct promptly any public statements issued by EDU which had become materially false or misleading.

65.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which EDU disseminated in the marketplace during the Class Period concerning EDU's results of operations.  Throughout the Class Period, the Individual Defendants

exercised their power and authority to cause EDU to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of EDU within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of EDU ADS.

66.     Each of the Individual Defendants, therefore, acted as a controlling person of EDU.  By reason of their senior management positions and/or being directors of EDU, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, EDU to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of EDU and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

67.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by EDU.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

20

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 25, 2012

<div style="margin-left: 50%;">

**POMERANTZ HAUDEK
GROSSMAN & GROSS, LLP**

Marc I. Gross
Jeremy A. Lieberman
Fei-Lu Qian
600 Third Avenue - 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665
migross@pomlaw.com
jalieberman@pomlaw.com
flqian@pomlaw.com

**POMERANTZ HAUDEK
GROSSMAN & GROSS, LLP**

Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

</div>

## Certification of Plaintiff
## Pursuant to Federal Securities Laws

1.    I, Jennifer Sax, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D (a) (2) of Title I of the Securities Exchange Act of 1934.

2.    I have reviewed a Complaint against New Oriental Education & Technology Group. ("New Oriental Education"), and authorize a filing of a comparable complaint on my behalf.

3.    I did not purchase my New Oriental Education securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.    I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my purchases and sales in New Oriental Education securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.    The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty or perjury that the foregoing is true and correct.

**Executed** _7/24/2012_ **, at** _Denver , CO_

(Date)

(City, State)

_7/24/2012_

(Signature)

Jennifer Sax

(Type or Print Name)

## Summary of Purchases and Sales

| DATE | TRANSACTION TYPE: PURCHASE OR SALE | NUMBER/ TYPE OF SECURITY | PRICE OF SECURITY |
|---|---|---|---|
| 07/16/2012 | Purchase | 200 EDU | $20.0899 x 200 |
| 07/18/2012 | Sale | 200 EDU | $14.47 x 200 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Name:  JENNIFER SAX