UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE NEW ORIENTAL EDUCATION & TECHNOLOGY GROUP SECURITIES LITIGATION | Civil Action No. 12-cv-05724-JGK |

**LEAD PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF JULIO TARDIO'S MOTION FOR RELIEF FROM THE LEAD PLAINTIFF ORDER PURSUANT TO FED. R. CIV. P. 60(b)(6)**

## **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ............................................................................................................................ 1
ARGUMENT .................................................................................................................................... 3
   I.   MPS ALONE MAY DEFINE THE CLASS REPRESENTED IN THE
       CONSOLIDATED ACTION ........................................................................................ 3
   II.  THE COURT SHOULD DE-CONSOLIDATE THE TARDIO ACTION ........................ 5
   III. TARDIO IS NOT A PROPER LEAD PLAINTIFF IN THE CONSOLIDATED
       ACTION UNDER THE PSLRA .................................................................................... 7
CONCLUSION ................................................................................................................................. 9

Lead Plaintiff Mineworkers' Pension Scheme ("MPS") respectfully submits this supplemental memorandum of law in opposition to plaintiff Julio Tardio ("Tardio")'s motion under Fed. R. Civ. P. 60(b)(6) for relief from the Court's October 25, 2012 Pretrial Order No. 1 ("Lead Plaintiff Order"), Dkt. No. 22.

## INTRODUCTION

As discussed during oral argument on April 18, 2013, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, empowers MPS, as the Court-appointed lead plaintiff, to define the class it seeks to represent in a consolidated securities class action according to its own investigation and strategic decision-making to further the best interests of the class. There is no legal authority to the contrary, and this happens in every case. Lead plaintiffs appointed under the PSLRA frequently shorten the class period, add or eliminate named defendants, or add or eliminate classes of securities in connection with the filing of a consolidated amended complaint. In common practice, and in conformity with the purpose and intent of the PSLRA's lead plaintiff provisions, this does not give rise to seriatim motions brought by smaller investors who were "left out" of the class action seeking to represent similar, though slightly different, classes of investors for extended class periods, against additional defendants, or on behalf of different classes of securities.

Nonetheless, MPS understands the Court's concern that option traders are not being represented in this case now that MPS has filed its Consolidated Amended Complaint (the "Complaint"), despite the fact that a potential option trading class has been consolidated, and further understands the Court's concerns regarding the running of the statute of limitations against these potentially aggrieved investors. Under these circumstances, MPS believes that the best resolution would be the de-consolidation of the Tardio action from the present action. Upon de-consolidation, and subject to Court approval, Tardio may file an individual or a class action

complaint, and all pretrial proceedings can be coordinated between the separate cases. Such a result does not run afoul of the PSLRA, under which the consolidation decision is permissive, and decided within the discretion of the Court under Fed. R. Civ. P. 42. MPS met and conferred with Tardio about a possible resolution along these lines, but Tardio refused to so stipulate. Nonetheless, it is the best and proper method for proceeding given the Court's concerns.

MPS continues to object, however, to being forced into a co-lead plaintiff structure that includes Tardio, Tardio's counsel, and a class of option traders within the consolidated action now proceeding as a putative class of purchasers of New Oriental Education & Technology Group, Inc. ("EDU" or the "Company") American Depositary Shares ("ADSs"). Tardio is not a proper lead plaintiff in the consolidated action because he is not a member of this class. He purchased or acquired no ADSs during the class period, and his financial interest in the consolidated action is therefore non-existent. There is thus no basis for appointing Tardio as a co-lead plaintiff, and Tardio should be prevented from getting through the back door what he unquestionably could not get through the front door of the PSLRA's lead plaintiff provisions. For these, and the other reasons that follow, Tardio's motion should be denied, but the Court should de-consolidate and sever his action, based on the complaint he filed on August 29, 2012,[1] and should permit him to proceed on an individual or class basis, as the Court sees fit.

---

[1] *Tardio v. New Oriental Educ. & Tech. Grp., Inc.*, No. 12-cv-06619-JGK (S.D.N.Y. Aug. 29, 2012).

## ARGUMENT

**I.   MPS ALONE MAY DEFINE THE CLASS REPRESENTED IN THE CONSOLIDATED ACTION**

MPS is responsible for determining what claims to bring, on behalf of investors in which securities, against which defendants, over what period of time in this action. With each and every such decision, certain investors are included and certain investors are excluded from the defined class. *See In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, No. 10-cv-275 (PKC), 2011 WL 4538428, at *2 (S.D.N.Y. Sept. 29, 2011) ("a lead plaintiff necessarily makes determinations that limit the class of shareholders. Inevitably, any class definition establishes boundaries as to who may recover."). Tardio argues that, because he filed a complaint seeking to represent a group of investors now excluded from the class defined by MPS in the Complaint, he should be appointed co-lead plaintiff in this consolidated action and thus be permitted to modify the class definition set forth by MPS. There is no legal authority for this argument. Moreover, it is wholly contrary to the PSLRA because it invites lawyer-driven litigation.

Tardio attempts to distinguish the legal authority proffered by MPS in its opposition brief, including *In re Bank of Am.* and *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09-mdl-2017 (LAK) (S.D.N.Y. Apr. 24, 2009), Dkt. No. 86, but his argument fails. Tardio implies that there is some meaningful difference between those cases, in which the parties seeking appointment as co-lead plaintiffs "did not partake in the lead plaintiff process and subsequently filed new actions after the lead plaintiff had been appointed," Reply Br. at 7, and this case. But Tardio fails to provide any reason why his having participated in the lead plaintiff process should alter the outcome compelled by *In re Bank of Am.* and *In re Lehman Bros.* Tardio is in the same position as the plaintiffs in those cases, all of whom traded securities not included in the class definition set forth by the lead plaintiffs. Like them, he should not be permitted to interfere with the lead

3

plaintiff's decision-making.  There is no logical difference whether Tardio's request comes now, at the class certification stage, or at any point in the litigation.  His remedy would be to pursue his own individual case.

Tardio's sole counter-argument is that the statutes of limitations and repose are arguably running on his claims and those of similarly-situated EDU option traders.  Reply Br. at 5.  But this is true of any investor whose claims were initially included in pre-investigation pleadings and subsequently excluded on the basis of a properly-appointed lead plaintiff's investigation. For example, Tardio and other option traders are no different than the investors in ADSs that purchased or acquired their securities between July 21, 2009 (the start of the putative class period in the initial complaints[2]) and October 18, 2009 (the day before the start of the putative class period in MPS' Complaint).  By shortening the initial class period by 90 days, MPS has, based on its thorough investigation, declined to represent certain EDU ADS investors whose claims were originally included in the class definition.  MPS, in its discretion, has determined that they do not have valid claims against the Company, and that the initial plaintiffs erred by defining too broad of a class.  Those ADS investors are situated in *exactly* the same position as Tardio and the option traders that were originally part of the defined class.  This is precisely the kind of decision-making entrusted to lead plaintiffs by the PSLRA.

Similarly, MPS determined that EDU option traders do not have meritorious claims because, unlike ADSs, EDU option contracts were so thinly traded (without either sufficient

---

[2] *See Sax v. New Oriental Educ. & Tech. Grp., Inc.*, No. 12-cv-05724-JGK (S.D.N.Y. July 25, 2012), at ¶ 1 (defining a class of persons who purchased EDU ADSs between July 21, 2009 and July 17, 2012); *Gabel v. New Oriental Educ. & Tech. Grp., Inc.*, No. 12-cv-05963-JGK (S.D.N.Y. Aug. 3, 2012), at ¶ 1 (same).  MPS elected to exclude EDU ADS investors that purchased or acquired their securities between July 21, 2009 and October 18, 2009 because MPS determined that those EDU ADS investors do not have meritorious claims.

4

volume or regularity) to substantiate the use of the fraud-on-the-market doctrine. Both determinations are well within the scope of a lead plaintiff's authority.

Indeed, were Tardio's motion to be granted, the Court would be opening the door to similarly meritless challenges from jilted investors cut out of the proposed class who, though they do not have the largest financial interest in the litigation and have not demonstrated that they satisfy the requirements of Rule 23 pursuant to the PSLRA, would like through their counsel to second-guess a lead plaintiff's strategic direction. Such a ruling would therefore invite exactly the kind of "lawyer-driven litigation" that the PSLRA was designed to eliminate. *See* H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730; *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) ("One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation"). For these reasons, Tardio's Rule 60 Motion must be denied.

## II. THE COURT SHOULD DE-CONSOLIDATE THE TARDIO ACTION

Although the Rule 60 Motion cannot be granted in the manner contemplated by Tardio, the Court should de-consolidate and sever the Tardio action from the consolidated action. De-consolidation will not offend the PSLRA or the Federal Rules of Civil Procedure, and no prejudice to any party would result.

It is well-settled that consolidation is not mandatory but permissive under the PSLRA. *See, e.g.*, *Prefontaine v. Research in Motion Ltd.*, No. 11-cv-4068, 2012 WL 104770, at *1 (S.D.N.Y. Jan. 5, 2012) (observing, in PSLRA case, that "[t]he trial court has broad discretion to consolidate actions under Rule 42(a)"); *In re Cent. European Distribution Corp. Sec. Litig.*, No. 11-cv-6247 (JBS-KMW), 2012 WL 5465799, at *9 (D.N.J. Nov. 8, 2012) ("consolidation is permissive, rather than mandatory under the PSLRA"); *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998) ("the PSLRA permits consolidation of cases with substantially the same

5

claim or claims arising under the securities laws") (internal quotations omitted). Whether to consolidate related actions is decided according to Rule 42, not the PSLRA. "There is no question that, under Rule 42(a), consolidation is a matter of the Court's discretion." *In re Cent. European Distribution Corp. Sec. Litig.*, 2012 WL 5465799, at *9.

The *In re Central European Distribution Corp.* Court resolved a similar situation in this way. There, the Court considered whether to de-consolidate two securities actions involving the same defendants, the same types of legal claims, and overlapping class periods. *Id.* at *9. Because the Court-appointed lead plaintiff, Arkansas & Fresno, decided not to prosecute the claims of certain other investors that filed separate complaints, Grodko and Nelis, the Court found that Grodko and Nelis would be prejudiced "by subjecting them to a lead plaintiff that would neglect their claims." *Id*. But because vacating the lead plaintiff appointment "would prejudice Arkansas & Fresno and the entire [class it defined]," as well as running afoul of the PSLRA, which strongly supports appointment of investors with the largest financial interest, the Court declined to alter the lead plaintiff structure. *Id*. Finding that "all claims [must] receive sufficient attention from representatives with interest in prosecuting them," the Court de-consolidated the Grodko and Nelis actions from the action controlled by the PSLRA-appointed lead plaintiff, Arkansas & Fresno. *Id.* at *10.

The same resolution works here. If the Court de-consolidates the actions, MPS and the class of EDU ADS investors it has proposed would be able to proceed without interference, and without the threat of being distracted or derailed on account of legal issues that the lead plaintiffs have already determined do not merit the fight. Tardio and the class of EDU option investors he has (or will) proposed would be able to litigate their claims without the concern of being time-

barred.  Finally, the Court can easily order coordinated pretrial proceedings between Tardio's case and the consolidated case to minimize any potential prejudice to Defendants.

### III. TARDIO IS NOT A PROPER LEAD PLAINTIFF IN THE CONSOLIDATED ACTION UNDER THE PSLRA

The relief Tardio seeks, i.e., to be appointed co-lead plaintiff in this consolidated action, invites problems, and is squarely contrary to the PSLRA.  Not only does Tardio not have the largest financial interest in this litigation, he has *no financial interest at all* in this litigation.  The PSLRA forbids the appointment of non-class members as lead plaintiffs.  Moreover, appointing Tardio co-lead plaintiff in this action would severely prejudice MPS and the class of EDU ADS investors because it adds expenses and burdens (in addition to another layer of attorneys' fees) to the properly-appointed lead plaintiff in this case.

According to the transaction data submitted with Tardio's lead plaintiff application, Tardio did not purchase or acquire any EDU ADSs until after the end of the class period defined in the *Sax* action, the *Gabel* action, and MPS' Complaint.  Instead, he traded EDU option contracts at the tail end of that period (starting July 12, 2012), and had EDU ADSs put to him after the close of the class period, on July 18, 2012 and July 23, 2012.  *See* Declaration of Richard W. Gonnello in Support of Julio Tardio's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Counsel Ex. C, Dkt. No. 13-3.  Tardio therefore has absolutely no financial interest in the consolidated action.  The shares were merely put to him, at a contract-based price that has no bearing or relationship to the damages sought to be recovered by open-market ADS purchasers.

While it is not necessary for a lead plaintiff to have standing to sue on every available cause of action, *see Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004), it is axiomatic that "a plaintiff seeking to represent a class must be a member of the class he purports to represent."

7

*In re Satyam Computer Servs. Ltd. Sec. Litig.*, No. 09-mdl-2027 (BSJ), 2013 WL 28053, at *13 (S.D.N.Y. Jan. 2, 2013) (citing *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962)).  Further, the PSLRA requires a lead plaintiff to have standing to bring at least one claim on behalf of the class to be "typical" of the putative class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) (requiring lead plaintiff to satisfy the requirements of Rule 23).  Because Tardio only wound up being a holder of EDU ADSs after the close of the class period, and only on account of his failed bet with selling naked put options, he fails to satisfy these requirements.[3]

To correct Tardio's deficiency, MPS would have to expand the class period to accommodate Tardio.  However, MPS has determined that the proper close of the class period is July 17, 2012, not July 23, 2012, as Tardio asserts.  To appoint Tardio as co-lead plaintiff would therefore severely prejudice MPS and the class of EDU ADS investors it seeks to represent by mandating a class period for which there is no factual or legal support.  This prejudice can be avoided by de-consolidating the Tardio action from this action.  *See* Arg. II, *supra*.  For these further reasons, Tardio's Rule 60 Motion must be denied.

---

[3] Under the law of this Circuit, moreover, there is no legal basis for appointing Tardio co-lead plaintiff.  Tardio's reliance on case law from the Fifth Circuit for the argument that MPS is somehow inadequate to represent the interests of the class because it decided to exclude option traders is inapposite here.  *See* Reply Br. at 4-5 (discussing *Harold Roucher Trust v. Franklin Bank Corp.*, No. 08-cv-1810, 2009 WL 1941864 (S.D. Tex. July 6, 2009)).  Courts in the Second Circuit simply do not agree that such a decision renders a lead plaintiff inadequate under the PSLRA.  Instead, it acknowledges the inevitability of such decisions.  *See Hevesi*, 366 F.3d at 82 ("because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim").

## CONCLUSION

For the foregoing reasons, Tardio's Rule 60 Motion must be denied. However, the Court should de-consolidate Tardio's action from this action.

Dated:  April 26, 2013                                         **GRANT & EISENHOFER, P.A.**

/s/ Daniel L. Berger
JAY W. EISENHOFER
DANIEL L. BERGER
485 Lexington Avenue
29th Floor
New York, NY 10017
(646) 722-8500
(646) 722-8501 (Fax)

JEFF A. ALMEIDA
KYLE J. MCGEE
123 Justison Street
Wilmington, DE 19801
(302) 622-7503
(302) 622-7100 (Fax)

*Lead Counsel on Behalf of Lead Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2013 the attached **Lead Plaintiffs' Supplemental Memorandum of Law In Opposition To Plaintiff Julio Tardio's Motion for Relief from the Lead Plaintiff Order** was filed electronically. Notice of this filing will be electronically mailed to all parties registered with the Court's electronic filing system.

/s/ Daniel L. Berger
Daniel L. Berger